The opinion of the Court was delivered by
WitheRS, J.
The first question to be considered is, whether the defendant is entitled to a nonsuit. The motion proceeds upon the footing of the general rule, that the plaintiff is to shew, on pain of nonsuit, in action of trespass to try title, a good and perfect title, which implies that he shall connect himself with the oldest grant of the locus in quo, or else produce proof, which is held to be equivalent. The plaintiff founds his claim to be exempt from this rule on the footing, that he had shewn a claim of title by the defendant and himself from a common source, to wit, from one Marsh ; and the defendant, for the purpose of his motion for nonsuit, urges in reply that the plaintiff had not shewn that fact.
Upon examining the brief, supported by the notes of the progress of the trial, made by the circuit judge, we find it had appeared in behalf of Martin, the plaintiff, that Gary, who was defendant’s lessor, had taken a mortgage from Marsh as seized in fee of the premises in question: that he had purchased the same from the sheriff in 1843, at an official sale, under an execution of his own against Marsh ; and that, at a subsequent time, the plaintiff had bought the same premises, at an official sale by the sheriff, under an older execution against Marsh. We think this evidence did develope the fact, that both parties traced their claim of title to a common source, sufficiently to render it improper to grant a motion of nonsuit.
Supposing, however, the plaintiff had left his case defective, on this head, and the proof needed to shew a common origin of *546 the title claimed by both parties, appeared in the evidence adduced for the defendant, it does not follow he would be entitled to a nonsuit here. It was said in the case of Thomas & Ashby vs. Jeter and Abney, (1 Hill, 382,) as follows: “ Even if the presiding Judge had erroneously refused the nonsuit, and the defendants, in their defence, had supplied the proof necessary to make out the plaintiffs’ case, a nonsuit could not be directed here: it was their own imprudence to supply the proof, and when, upon the whole proof, it appears that the plaintiffs are entitled to recover,” (and, we may add, when the jury have ratified it.) “ it would be sporting with justice to say, they should be turned out of Court on account of such an error of the Judge.”
That the plaintiff need not travel beyond a source of title, common to himself and his adversary, is sufficiently established by the case just cited from 1 Hill 382, and Hill vs. Robertson, (1 Strob. 1).
The question involving the merits of the contest, then arose, to wit, which party had the better right to the title conceded once to have been in Marsh ? This concession is not to be regarded as working an estoppel upon defendant, so as to preclude him from shewing that he had acquired a better title than that which he had derived from Marsh; nor was it so treated in this case, for evidence was heard in his behalf designed for that purpose. The difficulty was, that he did not prove the acquisition, by himself, of such better title; he only raised a doubt as to where the real, paramount, legal title was. Considering the relation which these parties bore to each other touching a title, good as to the one or the other of them, in this contest that was not enough, especially where the defendant has gained the jpossession of the premises under a title which he would repudiate. For it will be found, and may be remarked as matter of illustration, that where the doctrine of estoppel (call it equitable or common law doctrine) applies restraint to a tenant in favor of a landlord, it is far more stringent, in view of English and American Courts, where the tenant would impute defects in landlord’s title existing when he entered and those arising subsequently, *547 though he agreed to hold the premises, already in possession, under the landlord.
Upon the question, which had the better right to the title claimed by each, the defendant shewed that Gary acquired the. first conveyance from the sheriff, Martin acquired a conveyance subsequently from the same quarter. Without' more, this must have placed the defendant on the vantage ground. But the plaintiff imputed fraud to the sale by the sheriff to Gary, founded on the fact, that the sheriff sold under a junior fi. fa. in favor of Gary, who attended, and, presenting a mortgage from Marsh to himself of the premises under sale, said, that “the sale was made to complete the title.” The jury, applying the standard prescribed to them, — “ that all sales at auction should be open to full and free competition,” and that a purchaser must do no act, “ the effect of which was to destroy this fair competition,” — have affirmed, that Gary’s conduct did contravene such rule of law and did vitiate the sale by the sheriff to himself. In this they differed from an opinion expressed by the presiding Judge in the report, but whether to the jury is not stated.
Without undertaking to form any opinion ourselves upon the fact, in the present case we must allow, that when such a question does arise in a cause, there is no other arbitrament to which it can be submitted but that of the jury. They have been satisfied, in the present instance, by the considerations, that a mortgagee of the premises presented himself at a sheriff’s sale, where the rule of caveat emptor prevails, with mortgage in hand ; proclaimed that the sale was made to complete title ; that this can be accomplished only (so far as mortgagee is concerned) in case his mortgage be of date prior to any judgment in favor of another against the mortgagor; that the proclamation naturally imported that such was the case; that such was not in fact the case; that the absolute estate of Marsh was properly on sale and is now claimed to have been sold, whereas the equity of redemption alone was represented to be on sale, and so represented by the purchaser at that sale, and his representation was adopted by the sheriff, at least not repudiated or corrected. We would not ven *548 ture so far to trench upon the province of the legal triers of fact as to reverse such their decision.
It has been suggested, however, at the bar, (and the idea has attracted attention in this Court) that there is inconvenience, and danger of serious mischief, in entertaining an action of trespass to try title, by a subsequent against a prior purchaser of the same land, from the same sheriff, sold as the property of the same defendant in executions, which are existing and in force at either sale, — until, by proceedings in equity, the prior sale shall have been declared void and set aside. It is suggested that the question of fraud, when presented collaterally, may not be thoroughly sifted — that a mere mistake of opinion, expressed with no dishonest end, may be confounded with the utterance of a corrupt falsehood, with deliberate purpose of deception — that all this may be imputed to a casual observation, when no one regarded or acted on it — that if such conduct as Gary’s “ chilled ” the sale, such as the plaintiff’s can have no less effect, since property is pushed under the hammer, for the second time, under most forbidding difficulties and a cloud of doubt — and a purchaser must be bold enough to make up his mind to unavoidable litigation — that under such circumstances both debtor and creditors are subjected to forfeiture — that, finally, a high equity may be submitted to a law tribunal. There is force in such views. In many cases they must be very potent, — yet it may be answered, that creditor or debtor in execution may resort to equity, and, as we suppose, restrain all other proceedings until the remedy may be exhausted in that jurisdiction. Besides cases may, perhaps, arise in a form and under circumstances which we could not exclude from this forum, upon any ground of convenience or of law. Suppose a decree for $25 should exist against a land owner, and the plaintiff in execution should cause a palpably fraudulent sale of his land for one-fiftieth of its value, buy it himself, and take possession — could we exclude a bona fide purchaser from defendant in execution for the full value of his land from his action, simply because he had to travel over such a prior sale, and extinguish it, when he could do so by the most overwhelm *549 ing evidence of fraud ? Such and like cases niight be conceived, as to realty or personalty, where the expenses of litigating in Chancery might prove a very formidable obstacle to the course of justice;—and it cannot be maintained that a question of fraud at a sheriff’s sale, or in other forms, is not cognizable at law.
At any rate, just such a case as this, presenting the same question, in the same form of action, and decided in the same way, went before the jury at Union—and their finding of fraud in the sheriff’s sale, though not in accordance with the opinion expressed to them by the circuit judge, was sustained by the Court of Appeals at Columbia. (Keenan vs. Pearson, MS. May Term, 1830). (a)
*550 The objection set down to the admission of evidence on the part of the plaintiff having been abandoned here, and the considerations herein before directed to the other grounds of appeal, satisfying this Court that the defendant should take nothing by his motions, the same are, therefore, dismissed.
O’Neall, Evans, Frost and Whitner, JJ. concurred.

Motions dismissed.

 Roland Keenan vs. P. R. Pearson. This was an action of trespass to try title, tried at Union, Spring Term, 1830, before O’Neall, X, who reported the case as follows : “ The plaintiff purchased the land at sheriff’s sale as the property of the defendant. It was sold under the judgment of Thomas Linam vs. P. R. Pearson.
“ The defendant relied on the defence that the sale and purchase were fraudulent. A bill had been filed in Equity to set aside the sale on account of the fraud, which had been dismissed for want of prosecution.
“ It appeared that the land was sold by a deputy of John Bates, while sheriff of Union. It was sold on the first Monday in March, 1825, (which was the first day of the Court,) between the Court House and the jail, and about 40 or 50 yards from the former. Very few persons were present. The plaintiff and the deputy sheriff, Thos. Bates, were seen walking together a few minutes before the land was sold. The plaintiff was a junior judgment creditor, and attended the sale for the avowed purpose, on his part, of preventing the land from being sacrificed. The sheriff had been directed by Mr. Thomson, who was Linam’s attorney, to have on Linman’s execution a balance of four or five hundred dollars uncollected, and not to sell the land until he was present. The land was put up and sold when Mr. Thomson was absent. The deputy, Thos Bates, put up the land and the plaintiff bid $500. Mr. Gregory, standing by, said, if the land was clear of incumbrances he would give $1000: the deputy asked, if he was to consider his a bid: he said, not, if the land was not clear of incumbrances: the deputy made no reply, but cried the plaintiff’s bid two or three minutes and knocked it off to the plaintiff. The land was proved to be worth $4000. At the same time, Parr Bates, a brother of the sheriff, and the deputy, purchased a negro woman belonging to the defendant, sold by the sheriff: the plaintiff lent him the money to pay for her. The sheriff, John Bates, the deputy, Thos.' Bates, and • Farr Bates, were examined, and severally denied that there was anyfraudin the sale or any concert between them and the purchaser.
“ I instructed the jury, that, unless the plaintiff was a party to the'fraud committed on the defendant in the sale of the land, the sale to and purchase by him would be good.
“ I recapitulated the evidence to them, and pointed out the evidence relied on by both parties to set aside or support the sale. I advised them that the evidence was not sufficient to authorize a finding for the defendant.
“ The jury, however, found for the defendant.”
The plaintiff appealed on the grounds, inter alia,
Because there was no legal proof, either positive or presumptive, of any fraud on the part of the plaintiff; and the verdict was contrary to law and evidence, and against the clearly expressed opinion of the Court.
Because the case was not a proper one for the Court of law to pass on after the party had failed to move the Court to set aside the sale, and let plaintiff pay his *550 money, and filed a bill in Equity to set aside the sale and had abandoned the case in Equity — all which went to throw the plaintiff off his guard.
A. W. Thomson, for the appellant.
Herndon, Johnston, contra.
May Term, 1830. Per Curiam. The legal grounds cannot avail the plaintiff; and although the presiding Judge thought the evidence insufficient, and so expressed himself to the jury, yet as he is now satisfied with the verdict, this Court cannot be otherwise. If the trial by jury be as valuable as it is generally considered, it must be admitted that it is in-such cases as this that its value is of most importance. They know the actors, and being themselves daily concerned in the business of life, can scan the actions of man and develope his motives much more readily than one who is confined to the closet.
Motion dismissed.
Colcock and Johnson, JJ. concurring.